

# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

**TRIAL COURT
SUPERIOR COURT DIV.**

SARA CARUSO,

    Plaintiff,

v.

DELTA AIR LINES, INC.

    Defendant.

C.A. No. 1984CV04014

## ACCEPTANCE OF SERVICE

    I, Lorenzo R. Cabantog, counsel for Defendant Delta Air Lines, Inc., hereby accept

service of process on behalf of said Defendant.

Respectfully submitted,
Defendant, Delta Air Lines, Inc.,
By its attorney,

Dated: _January 13, 2020_

Lorenzo R. Cabantog (BBO# 692298)
lorenzo.cabantog@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel.: (617) 994-5713
Fax: (617) 994-5701



# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

TRIAL COURT
SUPERIOR COURT DIV.

SARA CARUSO,

    Plaintiff,

v.

DELTA AIR LINES, INC.

    Defendant.

C.A. No. _____

## COMPLAINT

## INTRODUCTION

1.   This action arises from the rape of Plaintiff Sara Caruso ("Plaintiff" or "Ms. Caruso")

by a first officer and fellow employee of Defendant Delta Air Lines, Inc. ("Delta") while the two

were traveling in their capacity as Delta employees. After Plaintiff reported the rape to Delta

management, Delta responded in a manner that was wholly inappropriate and retaliatory.

Without limitation, Delta took steps to interfere with Plaintiff's report of the rape to police and

with Plaintiff's pursuit of appropriate treatment for the trauma that she had experienced. When

Plaintiff attempted to return to work months after the rape, Delta denied Plaintiff basic,

reasonable accommodations for her post-traumatic stress disorder stemming from the rape.

Without limitation, Delta refused to ensure that Plaintiff was not required to work with or stay in

a hotel with her rapist. By failing to provide Plaintiff with a safe workplace free from sexual

harassment and with basic protections to ensure her mental wellbeing, Delta constructively

discharged Plaintiff from her employment. In doing so, Delta violated Massachusetts and federal

laws prohibiting discrimination and retaliation in the workplace.

## PARTIES

2.   Plaintiff Sara Caruso is a natural person who resides in Bountiful, Utah.

3.   Respondent Delta Air Lines, Inc. is a corporation organized under the laws of

Delaware with a business address of 1030 Delta Blvd., Dept. 982, Atlanta, Georgia.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over this action pursuant to G.L. c. 151B, § 9.

5.   Venue properly lies in Suffolk County, as at all relevant times, Plaintiff worked out of

Boston, Massachusetts, and as the majority of violations of law occurred in therein.

## FACTUAL BACKGROUND

6.   Delta hired Plaintiff as a flight attendant in or about March 2016.

7.   During most times relevant to this Complaint, Ms. Caruso resided in

Middleborough, Massachusetts, and worked for Delta as a flight attendant based out of Logan

International Airport ("Logan") in Boston, Massachusetts.

8.   As a Delta flight attendant, Ms. Caruso traveled frequently as part of her job, often

for several days at a time.

9.   As a Delta employee, Ms. Caruso was subject to Delta's strict "chain of command,"

under which flight attendants report to and take direction from the first officer, who in turn

reports to and takes direction from the captain.

10.   Delta's "chain of command" is in effect not only while crewmembers are on the

aircraft, but also while staying on "overnights" while traveling as part of Delta flight crews.

11.   On **August 2, 2018**, Ms. Caruso left Logan as part of a Delta flight crew for a trip

that was anticipated to last several days.

12. On the evening of **August 3, 2018**, Ms. Caruso and several Delta colleagues patronized bars and restaurants in Dallas, Texas, where they were to stay overnight between flights.

13. The group consisted of three female flight attendants, including Ms. Caruso, and a male first officer ("the First Officer").

14. In their respective roles as first officer and flight attendant, the First Officer was a superior of Ms. Caruso.

15. The First Officer bought the three flight attendants drinks throughout the evening.

16. At or about 9 p.m., Ms. Caruso returned to the hotel with her colleagues, including the First Officer.

17. Ms. Caruso recalls assisting another female flight attendant, who was visibly intoxicated, to that flight attendant's room.

18. Ms. Caruso recalls little, if anything, of the rest of the evening.

19. Early the following morning, **August 4, 2018**, Ms. Caruso awoke in a confused state. She was wearing a different shirt, had torn nylons on, and was wearing different underwear. She discovered that her belongings had been rifled through. Her cell phone and bra were gone.

20. Later, Ms. Caruso learned that cash was missing from her wallet.

21. Ms. Caruso had no memory of what had taken place.

22. Alarmed and aware that something was wrong, Ms. Caruso desperately attempted to engage Delta by phone.

23. Despite persistent efforts, Ms. Caruso was unable to engage Delta for assistance.

24. Constrained to report to the airport early that morning or face discipline from Delta, Ms. Caruso proceeded to report to her flight.

25.  Ms. Caruso left the hotel and traveled on a van with several other Delta employees to the Dallas-Forth Worth, Texas, airport, where a Delta representative met her at the curb.

26.  Ms. Caruso was given a breathalyzer test and was then told that she had tested over the limit.

27.  Ms. Caruso was surprised at the test results, as she had no recollection of consuming alcohol after the time that she left the bar, at or about 9 p.m. the previous evening.

28.  Delta took Ms. Caruso off the flight and returned her to Boston.

29.  Back in Boston, Ms. Caruso's supervisor, Amy Broach ("Ms. Broach"), informed Ms. Caruso that Delta had received a call from the hotel reporting that Ms. Caruso was walking around its hallways in her underwear, knocking on doors and talking incoherently.

30.  Ms. Caruso had no memory of doing this.

31.  Ms. Caruso returned to her home.

32.  Later on August 4, 2018, Ms. Caruso observed that bruises were forming on her face, legs and hips.

33.  Ms. Caruso went to an emergency room, where she underwent a sexual assault exam.

34.  The Sexual Assault Nurse Examiner who examined Ms. Caruso observed the bruises and noted that Ms. Caruso had petechiae in her eyes, which are indicative of possible strangulation.

35.  Evidence of sexual intercourse was found.

36.  Ms. Caruso, however, had no memory of engaging in sexual intercourse.

37.  Ms. Caruso had not consented to sexual intercourse.

38.  The Sexual Assault Nurse Examiner indicated to Plaintiff that she believed that Ms. Caruso may have been drugged, potentially in combination with alcohol, and raped.

39.   In the immediate aftermath of the rape and thereafter, Ms. Caruso has provided Delta with information supporting the fact that she had been raped and that she had reason to believe that the perpetrator was the First Officer.

40.   Delta's reaction to Ms. Caruso's concerns was punitive.

41.   Despite contrary advice from the psychologist who examined Ms. Caruso at Delta's behest, Delta ordered Ms. Caruso to attend an out-of-state alcohol rehabilitation program.

42..   The alcohol rehabilitation program was ill-suited to helping Ms. Caruso process the trauma of the rape.

43.   The program also severely limited communication with the outside world, which impeded Ms. Caruso's efforts to engage law enforcement in Dallas, Texas, where the rape took place.

44.   As Ms. Caruso informed Delta, the medical exam had found evidence of sexual intercourse, of which Ms. Caruso had no memory.

45.   Delta has been informed that Ms. Caruso had visible bruising and petechiae in her eyes, which are indicative of possible strangulation.

46.   Ms. Caruso also provided Delta with information supporting her reasonable belief that the First Officer was the assailant.

47.   Statements by the First Officer have been not only inconsistent, but incriminating.

48.   Initially, in a memo dated August 9, 2018, the First Officer reported that he and Ms. Caruso "decided to hang out and talk for a while" after returning to the hotel and that he then returned to his room.

49.   In a second statement, dated April 3, 2019, the First Officer admitted that on the night of August 3, 2019, he was with Ms. Caruso in her hotel room and that the two kissed and touched. According to the First Officer's second statement, Ms. Caruso was not visibly

intoxicated. He reported that Ms. Caruso wanted to engage in sexual intercourse, but said that he needed to go get a condom. He said that when he returned to Ms. Caruso's room 15 to 20 minutes later, she was in the shower. He said that, at that point, he believed that Ms. Caruso was too intoxicated for sexual intercourse and so he helped her to bed. According to the First Officer, he left Ms. Caruso's room around midnight.

50.   Ms. Caruso has no recollection of the First Officer being in her room at all.

51.   Ms. Caruso did not consent to engaging in sexual intercourse with the First Officer, or anyone else, on the evening of August 3-4, 2018.

52.   On information and belief, the First Officer raped Ms. Caruso on the evening of August 3-4, 2018.

***Plaintiff's First Charge of Discrimination***

53.   On or about December 18, 2018, Ms. Caruso filed a complaint against Delta and Ms. Broach with the MCAD and EEOC, which the agencies designated as 18-BEM-03664 and 16C-2019-00671, respectively.

54.   Ms. Caruso's charge included claims for sexual harassment, sex discrimination, and retaliation, under G.L. c. 151B ("Chapter 151B"), and Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e *et seq.* ("Title VII").

55.   In the aftermath of Plaintiff's filing of her first charge of discrimination, Delta has continued to act unlawfully.

56.   Further, and in no small part due to Delta's actions and omissions, Plaintiff's mental health has deteriorated.

57.   Plaintiff developed post-traumatic stress disorder ("PTSD") due to the rape and has engaged Delta to provide certain reasonable accommodations to enable her to return to work safely and in good health.

58.   Beginning in January 2019 and continuing for several months, Plaintiff began to engage Delta to provide reasonable accommodations for her PTSD.

59.   Plaintiff requested that Delta refrain from assigning her to work on the same flight as the First Officer and from requiring her to stay in the same hotel as he did on an "overnight," and that Delta reassign her to a new field services manager.

60.   Ms. Caruso provided medical documentation in support of her requests for reasonable accommodation.

61.   Delta's responses to Plaintiff's requests and inquiries concerning reasonable accommodation were unduly slow and not in good faith.

62.   After considerable delay, Delta ultimately declined to refrain from scheduling Ms. Caruso to work on the same flight as the First Officer, her apparent rapist.

63.   Instead, Delta indicated that if Ms. Caruso observed that she was scheduled to be on the same flight as the First Officer, she could call in.

64.   This would result in lost income and, potentially, disciplinary action.

65.   Moreover, this "accommodation" would not necessarily prevent the harm, as either the First Officer or Ms. Caruso could be assigned to a flight at the last minute, depriving Ms. Caruso of a reasonable opportunity to change the flight.

66.   Delta also declined to refrain from assigning Ms. Caruso and the First Officer to the same hotel.

67.   Instead, Delta told Ms. Caruso that if Delta scheduled Ms. Caruso and the First Officer to stay at the same hotel, Ms. Caruso could stay at another hotel at her own expense.

68.   Not only would this measure be costly to Ms. Caruso; once again, it would not necessarily be effective, as Ms. Caruso had no way of knowing in advance whether the First Officer would be at the same hotel as she was.

***Duty to Prevent Further Violations of G.L. c. 151B***

69.    Apart from its obligations to provide reasonable accommodations for Ms. Caruso's

disability, Delta also has an affirmative obligation to protect Ms. Caruso from further sexual

harassment.

70.    To that end, Ms. Caruso also attempted to engage Delta to separate her from The

First Officer.

71.    Delta has failed to take reasonable steps to protect Ms. Caruso from her assailant,

despite having sufficient information about the fact that she was raped and that the First Officer

was the likely perpetrator.

***Return to Work***

72.    On or about June 2, 2019, Ms. Caruso returned to work for the first time since

August 4, 2018.

73.    On or about June 5, 2019, Ms. Caruso embarked on a two-day trip.

74.    While traveling, Ms. Caruso spoke with another flight attendant, Mary Doyle ("Ms.

Doyle"), who asked Ms. Caruso whether she had heard a story about an intoxicated flight

attendant who had been walking around a hotel in a state of undress, talking incoherently.

75.    Ms. Caruso said that she had not, to which Ms. Doyle replied that she had heard that

the flight attendant was Ms. Caruso.

76.    Ms. Doyle also reported that Delta had asked the hotel to search Ms. Caruso's room

for "nips" (small bottles of alcohol) from the plane.

77.    Plaintiff was surprised and alarmed. Ms. Caruso told Ms. Doyle what had actually

happened, and Ms. Doyle appeared taken aback.

78.    Ms. Doyle told Ms. Caruso that "everybody" had heard the story about the

intoxicated flight attendant.

79.   It was apparent that Delta had not respected Ms. Caruso's privacy with respect to the rape, and that the rape of Ms. Caruso had become the subject of gossip and innuendo.

80.   Delta met Ms. Caruso's concerns about the rumors with conclusory denials but, on information and belief, failed to take reasonable steps to protect Ms. Caruso's privacy and to stem the gossip.

81.   On or about June 8, 2019, Ms. Caruso was scheduled to travel to Dallas, Texas, where Delta had assigned her to spend the night in the same hotel where she had been raped.

82.   While at Logan, Ms. Caruso experienced a panic attack and, as a result, was unable to work the flight.

83.   Ms. Caruso's depression deepened, and she experienced suicidal ideation.

84.   On or about June 11, 2019, Ms. Caruso checked herself into a hospital, where she remained on in-patient basis for several days.

85.   On or about June 27, 2019, Ms. Caruso was on call and was assigned to another trip.

86.   Just before the scheduled trip, Delta confronted Ms. Caruso about private Facebook messages that she had sent to other flight attendants in which Ms. Caruso asked them to tell her if the First Officer was in Massachusetts and warned them to stay away from him.

87.   In response to the Facebook messages, Delta took Ms. Caruso off her scheduled flights, causing her to lose income.

88.   Ms. Caruso's Facebook messages, which were in furtherance of her claims and in opposition to Delta's violation of civil rights laws, were protected activity under both Chapter 151B and Title VII.

89.   Delta's punitive response to Ms. Caruso's Facebook messages was unlawful retaliation.

9

90.     Because Ms. Caruso was unable to feel safe from the First Officer, either on a flight or an overnight, her depression and anxiety worsened.

91.     By failing to provide reasonable accommodations, retaliating against Ms. Caruso, continually discriminating against her, and/or subjecting her to harassment and unlawful discipline, Delta constructively discharged Ms. Caruso from her employment.

### *The Second Charge of Discrimination*

92.     On or about July 18, 2019, Ms. Caruso filed a second complaint against Delta with the MCAD and EEOC, which the agencies designated as 19-BEM-02170 and 16C-2019-02207, respectively. Ms. Caruso's second charge included claims for retaliation, disability/handicap discrimination, sex discrimination, and aiding and abetting, under Chapter 151B, Title VII, and the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.*

93.     Ms. Caruso sought permission from the EEOC to file suit with respect to the above-referenced charges of discrimination, which authorization was granted and/or received within ninety (90) days prior to the filing of this action.

94.     More than ninety (90) days have passed since Ms. Caruso filed the two above-referenced charges of discrimination with the MCAD.

### CLAIMS

### COUNT I – SEXUAL HARASSMENT/SEX DISCRIMINATION IN VIOLATION OF G.L. c. 151B, § 4 (1), (16A)

95.     Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 94 as if fully set forth herein.

96.     Delta discriminated against Plaintiff on the basis of her sex, including through the actions and omissions set forth above, and including without limitation:

    a.  By the First Officer's rape of Ms. Caruso;

b. By failing to conduct a timely, complete, neutral and good-faith investigation into the rape;

c. By interfering with Ms. Caruso's filing of a police report and law enforcement's investigation into the rape, and by effectively sequestering Ms. Caruso in a patently inappropriate rehabilitation program that prohibited contact with the outside world, including law enforcement;

d. By declining to take reasonable steps to protect Ms. Caruso from her apparent rapist when she returned to work, and

e. By constructively discharging Ms. Caruso from her employment.

97. Delta's actions and omissions violated G.L. c. 151B, § 4(1), (16A).

## COUNT II – SEXUAL HARASSMENT/SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2

98. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 97 as if fully set forth herein.

99. Delta discriminated against Plaintiff on the basis of her sex through the actions and omissions set forth herein, in violation of 42 U.S.C. § 2000e-2(a)(1)-(2).

## COUNT III – DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF G.L. c. 151B, § 4(16)

100. Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 99 as if fully set forth herein.

101. In the aftermath of being raped, Ms. Caruso was diagnosed with PTSD, which has caused her to experience, without limitation, severe anxiety, panic attacks, flashbacks, lassitude, anhedonia, difficulty communicating, and impaired cognition.

102.  Ms. Caruso's PTSD and related mental-health conditions substantially limit her major life functions of sleeping, speaking, breathing, concentrating, communicating, and/or working.

103.  Ms. Caruso's PTSD and related mental-health conditions also substantially limit her neurological/brain functions.

104.  Further, the rape that Ms. Caruso experienced was a work-related injury, as defined in the Massachusetts Workers Compensation law, G.L. c. 152.

105.  Subsequent to the rape, Ms. Caruso applied for and sought workers' compensation benefits related thereto.

106.  At all relevant times, Ms. Caruso was capable of performing the essential functions of her job as a flight attendant, with and/or without reasonable accommodations.

107.  In light of the foregoing, Ms. Caruso is a qualified person with one or more disabilities (sometimes referred to as "handicaps") under G.L. c. 151B.

108.  Delta unlawfully failed to provide reasonable accommodations to Ms. Caruso and failed to engage in a meaningful interactive process with her to attain reasonable accommodations.

109.  Delta's failure to provide reasonable accommodation(s) has caused Ms. Caruso severe emotional distress, exacerbated her PTSD, and resulted in her constructive discharge from her employment.

110.  In discriminating against Ms. Caruso because of her disability(ies), as set forth herein, Delta violated G.L. c. 151B, § 4(16).

## COUNT IV – DISCRIMINATION ON THE BASIS OF DISABILITY
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112

111.   Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 110 as if fully set forth herein.

112.   Delta discriminated against Ms. Caruso on the basis of her disability(ies) through the actions and omissions set forth herein, in violation of 42 U.S.C. § 12112(a).

## COUNT V – RETALIATION
## IN VIOLATION OF G.L. c. 151B, § 4(4)

113.   Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 112 as if fully set forth herein.

114.   Ms. Caruso engaged in various activities protected by G.L. c. 151B, at set forth herein.

115.   These protected activities included, without limitation, Ms. Caruso's communications concerning the rape she experienced, her filing of administrative charges of discrimination, her efforts to secure reasonable accommodation(s), and her communications aimed at securing her right to be free from sexual harassment.

116.   Through the actions and omissions set forth herein, and in violation of G.L. c. 151B, § 4(4), Delta retaliated against Ms. Caruso because of her activities protected by G.L. c. 151B, up to and including by constructively discharging Ms. Caruso from her employment.

## COUNT VI – INTERFERENCE WITH RIGHTS
## IN VIOLATION OF G.L. c. 151B, § 4(4A)

117.   Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 116 as if fully set forth herein.

118.  Through the actions and omissions set forth herein, and in violation of G.L. c. 151B, § 4(4A), Delta interfered with Ms. Caruso's pursuit of her rights afforded by G.L. c. 151B.

## COUNT VII – AIDING AND ABETTING
## IN VIOLATION OF G.L. c. 151B, § 4(5)

119.  Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 118 as if fully set forth herein.

120.  Through the actions set forth herein, and in violation of G.L. c. 151B, § 4(5), Delta aided and abetted the First Officer in his violations of G.L. c. 151B, including without limitation by:

a.  Impeding the report of, and investigation into, Ms. Caruso's rape;

b.  Declining to provide Ms. Caruso with, and interfering with Ms. Caruso's ability to obtain, critical information concerning the circumstances surrounding her rape;

c.  Acting with undue deference to the First Officer, and

d.  Failing to take reasonable steps to protect Ms. Caruso from her apparent rapist.

## COUNT VIII – RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)

121.  Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 120 as if fully set forth herein.

122.  Delta retaliated against Ms. Caruso through the actions and omissions set forth herein, in violation of 42 U.S.C. § 2000e-3(a).

## COUNT IX – RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203(a)-(b)

123.   Plaintiff repeats and reavers the allegations set forth in Paragraphs 1 to 122 as if fully set forth herein.

124.   Delta retaliated against Ms. Caruso through the actions and omissions set forth herein, in violation of 42 U.S.C. § 12203(a)-(b).

WHEREFORE Plaintiff Sara Caruso demands compensation for emotional distress; compensatory damages, including without limitation, for emotional distress, lost wages and benefits, and medical expenses; punitive damages; attorneys' fees; costs; statutory interest; and all other relief that the Court deems meet and just.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully Submitted,
SARA CARUSO,
By Her Attorneys,

Dated:  December 30, 2019

Eric R. LeBlanc (BBO# 666786)
eleblanc@bennettandbelfort.com
Michaela C. May (BBO# 676834)
mmay@bennettandbelfort.com
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800

15



# EXHIBIT C

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| PLAINTIFF(S): Sara Caruso | COUNTY |
|---|---|
| ADDRESS: 1032 East Center Street | Suffolk |
| Bountiful, UT 84010 | DEFENDANT(S): Delta Air Lines, Inc. |

| ATTORNEY: Eric R. LeBlanc | |
|---|---|
| ADDRESS: Bennett & Belfort, PC | ADDRESS: 1032 Delta Blvd. Dept. 982 |
| 24 Thorndike St., Ste. 300 | Atlanta, GA 30354 |
| Cambridge, MA 02141 | |
| BBO: 666786 | |

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES  ☐ NO |

*If "Other" please describe:

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ...........................................................................
    2. Total doctor expenses ............................................................................
    3. Total chiropractic expenses ...................................................................
    4. Total physical therapy expenses ............................................................
    5. Total other expenses (describe below) ...................................................

                                                     Subtotal (A):

B. Documented lost wages and compensation to date ..............................................
C. Documented property damages to dated ............................................................
D. Reasonably anticipated future medical and hospital expenses ............................ $
E. Reasonably anticipated lost wages ................................................................ $
F. Other documented items of damages (describe below) ........................................ $ 5,000,000
  G.L. c. 151B damages

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                  TOTAL (A-F):$ 5,000,000

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

                                  TOTAL: $

Signature of Attorney/Pro Se Plaintiff: X            Date: **12/30/2019**

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X            Date: **12/30/2019**

RECEIVED
SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE
DEC 30 2019

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c.231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party †

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical / Wrongful Death | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death, G.L. c.229 §2A | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10 §28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c.249 §4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93 §9 | (A) |
| E07 Mass Antitrust Act, G. L. c. 93 §8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149 §§29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12 §11H | (A) |
| E24 Appeal from District Court Commitment, G.L. c.123 §9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c285 §56 | (X) |
| E95 Forfeiture, G.L. c.94C §47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A §12 | (X) |
| E14 SDP Petition, G.L. c. 123A §9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c.6 §178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112 §12S | (X) |

TRANSFER YOUR SELECTION TO THE FACE SHEET

EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.**

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.



# EXHIBIT D

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _1984 CV 04014_

SARA CARUSO , PLAINTIFF(s),

v.

DELTA AIR LINES, INC. DEFENDANT(s)

## SUMMONS

THIS SUMMONS IS DIRECTED TO _DELTA AIR LINES INC._ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the _Suffolk Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
    a. Filing your signed original response with the Clerk's Office for Civil Business, _Suffolk Superior_ Court, _Civil Business,_ _3 Pemberton Sq., 12th Fl., Boston MA 02108_ (address), by mail or in person, **AND**
    b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: _Eric R. LeBlanc, Bennett + Belfort, P.C., 24 Thorndike St, Ste 300, Cambridge MA 02141_

3.  **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.  Legal Assistance. You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  Required information on all filings: The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on ___Jan. 8___, 20 20.

*Michael Joseph Donovan*
Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___          Signature: _____

N.B.     TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.



**EXHIBIT E**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SARA CARUSO,**<br><br>                    **Plaintiff,**<br><br>          **v.**<br><br>**DELTA AIR LINES, INC.,**<br><br>                    **Defendant.** | C.A. No. _____ |

## AFFIDAVIT OF SHEANDRA R. CLARK

I, Sheandra R. Clark, hereby state as follows:

1.      I am over the age of eighteen, competent to make the statements below and have personal knowledge of the information described below.

2.      I am currently employed by Delta Air Lines, Inc. ("Delta" or the "Company") as Assistant General Counsel in Delta's Law Department.

3.      Delta is a Delaware corporation, with its principal place of business in Atlanta, Georgia.

4.      I have given this affidavit freely and voluntarily, and the statements made by me in this affidavit are true to the best of my personal knowledge.

SIGNED UNDER THE PAINS AND PENALTIES OF
PERJURY THIS 23rd DAY OF JANJARY, 2020:

*Sheanara R. Clark*
Sheandra R. Clark

DATED: January 23, 2020