United States District Court
District of Massachusetts

```
_____
                                )
Sara Caruso,                    )
                                )
            Plaintiff,          )
                                )
      v.                        )     Civil Action No.
                                )     20-10180-NMG
Delta Air Lines, Inc.,          )
                                )
            Defendant.          )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This case arises out of the alleged sexual assault of Sara Caruso ("Caruso" or "plaintiff").  Caruso claims that her employer, Delta Air Lines ("Delta" or "defendant") violated both state and federal law by discriminating against her on the basis of sex and disability stemming from the alleged assault, retaliating against her, interfering with her rights, and aiding and abetting the alleged assailant.  Pending before the Court is the defendant's motion for summary judgment.

I.  **Factual Background**

Caruso began working for Delta in 2016 as a flight attendant based out of Logan International Airport in Boston, Massachusetts.

- 1 -

On August 3, 2018, Caruso served as a flight attendant on Delta Flight 1171 from Boston to Dallas, Texas.  The flight crew, including Caruso, had an overnight layover in Dallas and a next day departure.  First Officer James Lucas ("Lucas") was a member that flight crew.

Upon their arrival in Dallas, Caruso, Lucas and two colleagues went out for dinner and drinks.  After a few hours, the group returned to the Hyatt Hotel ("the Hyatt") where Delta had reserved a block of rooms for the crew.  Caruso has no memory of what happened after returning to the hotel.

Lucas, however, remembers.  Although his account of the evening events has changed over time, he ultimately testified that, after he and Caruso assisted a colleague to her room, he and Caruso entered her room.  According to Lucas, Caruso was "under the influence" of alcohol.  He reports that he and Caruso subsequently engaged in various sexual acts and Lucas eventually returned to his hotel room to get a condom so that he and Caruso could have intercourse.  Upon his return to Caruso's room, Lucas testified that he found Caruso sitting in the shower, and clearly intoxicated.  He then observed Caruso vomit, assisted her in the shower, put her to bed and ultimately left her room. During the early hours of the following morning, Caruso called Delta Operations Control Center ("OCC") and, sounding

intoxicated, asked about Lucas' whereabouts.  Caruso was also observed walking in the hotel hallways in her underwear, looking for Lucas.

The next morning, Caruso failed to report to the hotel lobby on time for the shuttle to the airport for their return flight.  After a colleague went to Caruso's room and helped her get dressed, Caruso travelled to the airport with the rest of the crew.  Once there, she was met by a Delta representative who administered a breathalyzer test.  Caruso tested over the blood alcohol content limit set by the United States Department of Transportation ("DOT") for "safety-sensitive" positions integral to the safe operation of passenger aircrafts.  The DOT and the Federal Association Administration classify flight attendants as "safety-sensitive" positions and, consequently, Caruso was not allowed to work as scheduled.  Caruso returned to Boston under non-work status.

Upon her arrival in Boston, Caruso's supervisor notified her that she was suspended from Delta due to her failed breathalyzer test and would be subject to Delta's Employee Assistance Program ("EAP").  That program involves the evaluation and treatment of flight crew members who violate inter alia, the relevant alcohol policies.  Later that day, Caruso went to a hospital emergency room in Boston, where she

underwent a sexual assault exam.  Caruso asserts that she
notified Delta on August 4, 2018 that her alleged assailant was
Lucas, although Delta contends that the company was not so
informed until months later.

On August 5th, Caruso notified her supervisor about her
trip to the hospital and her completion of a sexual assault
exam.  Caruso's supervisor relayed the information to personnel
in Delta's Human Resources Department which subsequently
initiated an investigation into Caruso's alleged sexual assault.
As part of that investigation, Delta obtained statements from
Caruso's colleagues, including Lucas, who had socialized with
her on the evening of August 3rd.  Delta also attempted to
obtain key card swipes for Caruso's room at the Hyatt and
inquired as to whether any video was available from the hotel.
According to Delta personnel, Hyatt staff reported that the
information sought could not be released before the alleged
victim filed a police report with the Dallas Police Department
("DPD").  Caruso had not done so at that point.

Back in Boston, Caruso underwent an evaluation by an
independent substance abuse professional as part of Delta's EAP.
Based upon that evaluation, it was recommended that Caruso
attend a 30-day inpatient treatment program.  Caruso was
required to complete that program prior to resuming her work as

a flight attendant under Delta policy and DOT regulations.
Caruso completed the program in September, 2018, and thereafter
requested and received approval for a medical leave of absence
from Delta.  The parties dispute the extent of the support that
treatment program staff provided to Caruso and whether she was
encouraged to pursue legal action against her alleged assailant.

After Caruso left the treatment program, she reported the
alleged assault to the DPD.  The parties dispute whether that
was the first time the DPD was notified of the incident.
Nevertheless, a detective subsequently attempted to acquire
video footage from the Hyatt for the evening of August 3rd but
was unable to do so because the hotel only maintained video
surveillance for 20-25 days.

While Caruso was still on medical leave, in December, 2018,
Delta received a copy of a charge of discrimination she had
filed with the Massachusetts Commission Against Discrimination
("MCAD").  According to Delta, that was the first time Caruso
identified Lucas as her assailant.  Delta subsequently
interviewed Lucas in April, 2019 regarding the allegations in
that charge.  He told interviewers that he and Caruso had
engaged in consensual touching on August 3, 2018, but did not
have intercourse.  The interviewers found Lucas credible and he

was not disciplined.  The DPD later closed its own investigation
due to insufficient evidence.

In January, 2019, in preparation for her return to work,
counsel for Caruso contacted Delta to request workplace
accommodations in light of the alleged assault.  In the
aftermath of the incident, Caruso was diagnosed by a physician
to have post-traumatic stress disorder.  Due to that diagnosis,
Caruso requested that Delta refrain from assigning her to work
with or to be assigned to stay in the same overnight destination
as any male Delta employee who had worked on Flight 1171 and to
reassign her to a new supervisor.  In May, 2019, an interactive
discussion with respect to those requests occurred.  Caruso was
assigned to a new supervisor but was told that Delta's system
for assigning crew members to flights would not allow the
company to comply with Caruso's first request, at least in part
because Delta used a seniority-based bidding system to assign
flight attendants to flights.  After the meeting, Caruso agreed
with a Delta representative that it was her responsibility to
avoid working as a flight crew member on the types of aircraft
that Lucas was qualified to fly.

Caruso returned to work in June, 2019 with those
accommodations in place.  After she resumed work, Caruso sent a
message to colleagues via social media requesting that they

inform her if they learned that Lucas was going to be in Massachusetts so that she could serve him with legal process. The parties dispute whether a Delta employee verbally reprimanded Caruso for doing so.

On July 18, 2019 counsel for Caruso submitted a second charge to the MCAD claiming constructive discharge.  Less than one week later, Delta received a letter from counsel asserting that unless Delta granted Caruso's requested accommodation within two days, she would consider herself constructively discharged.  Before that letter was sent, Caruso had accepted a conditional job offer and reported to her new employer that her last date at Delta was July 26, 2019.

## II.  <u>Procedural History</u>

In December, 2019, Caruso filed suit in state court asserting nine counts against Delta as follows: for sex discrimination in violation of M.G.L. c. 151B, § 4(1),(16A) (Count 1) and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (Count 2); for disability discrimination in violation of M.G.L. c. 151B, § 4(16) (Count 3) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (Count 4); for retaliation in violation of M.G.L. c. 151B, § 4(4) (Count 5), for violations of Title VII, U.S.C. § 2000e-3(a) (Count 8), and the ADA, 42 U.S.C. § 12203(a)-(b) (Count 9);

for interference with rights in violation of M.G.L. c. 151B, §
4(4A) (Count 6); and for aiding and abetting in violation of
M.G.L. c. 151B, § 4(5) (Count 7).

Defendant removed the case to this Court in January, 2020,
on diversity and federal question grounds, and, in March, 2021,
filed the instant motion for summary judgment on all claims.

## III.  __Motion for Summary Judgment__

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a
genuine need for trial." Mesnick v. Gen. Elec. Co._,_ 950 F.2d
816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc._,_
895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving
party to show, through the pleadings, discovery and affidavits,
"that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law...." Anderson v. Liberty Lobby,
Inc._,_ 477 U.S. 242, 248 (1986).  A genuine issue of material
fact exists where the evidence with respect to the material fact
in dispute "is such that a reasonable jury could return a
verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Application

#### 1.    Sex discrimination claims (Counts 1 and 2)

Both Title VII and Chapter 151B prohibit employers from discriminating against employees based upon sex. 42 U.S.C. § 2000e-2(a)(1); M.G.L. c. 151B, § 4. Those provisions may be violated by subjecting an employee to an abusive or hostile work environment, "also known as sexual harassment." Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). To establish a claim for sexual harassment, a plaintiff must show:

> (1) that she (or he) is a member of a protected class;
> (2) that she was subjected to unwelcome sexual
> harassment; (3) that the harassment was based upon
> sex; (4) that the harassment was sufficiently severe
> or pervasive so as to alter the conditions of
> plaintiff's employment and create an abusive work

environment; (5) that sexually objectionable conduct
was both objectively and subjectively offensive, such
that a reasonable person would find it hostile or
abusive and the victim in fact did perceive it to be
so; and (6) that some basis for employer liability has
been established.

Ponte v. Steelcase, Inc., 741 F.3d 310, 320 (1st Cir. 2014); see

also id. at 319 n.9 (acknowledging that the same legal standard

applies to claims for hostile work environment brought under

both state and federal law).

The parties vociferously dispute, inter alia, the sixth

element, i.e. whether Delta is liable for Lucas' alleged

conduct.  Due to the centrality of that issue to the ultimate

determination of liability, the Court considers that last

element first.

Under both state and federal law, distinct standards apply

to establish employer liability for a hostile work environment

depending on whether the discriminator is a supervisor or a co-

worker of the victim.  If a supervisor is responsible for

creating a hostile work environment, the employer is generally

liable for the supervisor's misconduct.  Noviello v. City of

Bos., 398 F.3d 76, 94-95 (1st Cir. 2005) (noting the

availability of certain affirmative defenses under federal but

not state law).  In contrast, under both Title VII and Chapter

151B, when a co-worker, rather than a supervisor, is responsible

for creating a hostile work environment, the employer is liable

- 10 -

for the co-worker's misconduct only if the harassment is causally connected to the employer's negligence. <u>Forsythe</u> v. <u>Wayfair Inc.</u>, No. 21-1095, 2022 WL 592888, at *3 (1st Cir. Feb. 28, 2022).

The central issue in determining the supervisory status of an employee is "the degree of authority possessed by the putative supervisor." <u>Velazquez-Perez</u> v. <u>Devs. Diversified Realty Corp.</u>, 753 F.3d 265, 271 (quotation omitted).

> This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee.  Without some modicum of this authority, a harasser cannot qualify as a supervisor for purposes of imputing vicarious liability to the employer in a Title VII case, but, rather, should be regarded as an ordinary coworker.

<u>Noviello</u>, 398 F.3d at 96.  Although the question of an employee's supervisory status is factual in nature and thus should generally be determined by the fact finder, here, Caruso has not presented facts sufficient to permit a finding that Lucas was her supervisor.

Caruso refutes that conclusion by asserting that Delta flight captains have operational authority over all flight crew members, including flight attendants, during the pendency of a flight and emphasizing that Delta's employee manual requires crewmembers, including flight attendants, to "honor" the orders of captains during flights.  Caruso also notes that captains can

delegate certain roles to first officers.  She contends that,
due to that potential delegation, Lucas, as a first officer,
thereby acquired authority over her.

That argument is unavailing.  Lucas did not serve in a
supervisory role vis-à-vis Caruso within the statutory context
of Title VII or Chapter 151B because he had no authority "over
any tangible employment actions" affecting her. Velazquez-Perez
v. Devs. Diversified Realty Corp., 753 F.3d 265, 272 (1st Cir.
2014).  He did not determine her professional advancement, work
schedule or assignments.  At most, he possessed

> some limited responsibility to direct [Caruso] in
> certain [in-flight] protocols, a type of
> responsibility rejected in [Vance v. Ball State Univ.,
> 570 U.S. 421, 446 (2013),] as insufficient to make one
> a supervisor.

Velazquez-Perez, 753 F.3d at 272.  Nor has Caruso presented
evidence of additional factors,

> such as the authority to assign work, impose
> particularly exacting scrutiny, or a responsibility to
> protect other workers from sexual harassment

that would amount to supervisory status. Romero v. McCormick &
Schmick Rest. Corp., No. 1:18-CV-10324-IT, 2020 WL 1430530, at
*6 (D. Mass. Mar. 24, 2020).  Lucas did not have the requisite
modicum of authority and he was therefore Caruso's co-worker,
rather than her supervisor.

Based upon that conclusion, Delta can be liable for Lucas'
alleged misconduct only if the purported harassment is causally
connected to the employer's negligence.

> Typically, this involves a showing that the employer
> knew or should have known about the harassment, yet
> failed to take prompt action to stop it.

Noviello, 398 F.3d at 95.  Generally, determining what
constitutes such action "requires the sort of case-specific,
fact-intensive analysis best left to a jury." Forrest v. Brinker
Int'l Payroll Co., LP, 511 F.3d 225, 232 (1st Cir. 2007).  Here,
however, the undisputed facts reveal that no reasonable jury
could conclude that Delta's response failed to satisfy that
criterion which amounts to a negligence standard. See Toussaint
v. Brigham & Women's Hosp., Inc., 166 F. Supp. 3d 110, 117 (D.
Mass. 2015) ("The First Circuit has held that employer liability
for co-worker harassment is essentially a question of
negligence.").

After learning of Caruso's alleged assault, Delta solicited
statements from all Delta employees who socialized with her on
the subject evening, including Lucas, and attempted to secure
extrinsic evidence from the hotel within days.  Similarly, after
receiving notification of Caruso's MCAD charge of
discrimination, Delta interviewed Lucas in accordance with
corporate policy.  In contrast to circumstances where courts
have found that employers failed to take "prompt and effective

remedial action" in response to allegations of sexual
harassment, Delta took timely steps to investigate the incident.
Noviello, 398 F.3d at 83.

> This is also not a case in which:

> the investigation involved the employer choosing to do
> nothing more than ask the accused about those
> allegations and then credit self-serving denials.

Forsythe, at *5.  The record indicates that additional
investigatory steps were unavailable to Delta in the wake of
Caruso's alleged assault, particularly in light of the
inaccessibility of key card swipes and video footage from the
Hyatt.

Caruso draws attention to the inconsistencies between
Lucas' initial statement and his subsequent interview as grounds
for Delta's investigatory negligence.  Those inconsistencies
alone, however, are insufficient to demonstrate that Delta
failed to take remedial actions, particularly where Caruso's own
accounts of the evening were incomplete and inconsistent, and
extrinsic evidence was unavailable.  Moreover, whatever delay
occurred between Delta learning the identity of Lucas as the
alleged assailant and his interview does not amount to
negligence because there is no evidence that Delta "acted in a
dilatory manner" Noviello, 398 F.3d at 97.  More importantly,

there was no possibility that Caruso would be subject to further harassment by Lucas during that period because she was on leave.

Based upon the investigatory measures taken, Delta ultimately found Caruso's claims unfounded and, as such, the company was "not obligated to punish [Lucas] for unsubstantiated claims of harassment." Walker v. City of Holyoke, 523 F. Supp. 2d 86, 109 (D. Mass. 2007) (citing Swentek v. USAIR, Inc., 830 F.2d 552, 558 (4th Cir.1987)).  In contradiction of Caruso's assertions, Delta met its statutory requirement for remedial steps and the alleged harassment was not causally connected to any purported negligence of Delta.  Accordingly, defendant's motion for summary judgment on Counts 1 and 2 is **ALLOWED**.

### 2.    Disability discrimination (Counts 3 and 4)

Caruso asserts that Delta discriminated against her by failing to accommodate her disability or to engage in an interactive process to provide such accommodations, in violation of both state and federal law.  The Court focuses first on Caruso's claim of failure to accommodate because her assertion of liability for failure to engage is derivative. See Together Emps. v. Mass Gen. Brigham Inc., No. CV 21-11686-FDS, 2021 WL 5234394, at *14 n.14 (D. Mass. Nov. 10, 2021) ("Courts do not reach the issue of failure to engage in an interactive process when plaintiff cannot demonstrate that the requested

accommodation was reasonable under the circumstances." (citing Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 91 (1st Cir. 2012)).  Thus, if Caruso's failure to accommodate claim cannot stand, she has no basis to advance that alternative theory. Claims under M.G.L. c. 151B and the ADA are analyzed under the same framework. See Jones, 696 F.3d at 86.

To prevail at the summary judgment stage for failure to accommodate, Caruso must present sufficient evidence that, at the time of the alleged discrimination: (1) she was disabled within the statutory definition, (2) she could perform the job's essential functions either with or without a reasonable accommodation, and (3) Delta knew of her disability but failed to make a reasonable accommodation. See Audette v. Town of Plymouth, MA, 858 F.3d 13, 20 (1st Cir. 2017).  If Caruso meets all three of those elements, the burden shifts to Delta to articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason. See generally Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 104 (1st Cir. 2007).  If Delta offers a reason, the burden returns to Caruso, who must then provide evidence to establish that Delta's non-discriminatory justification was mere pretext, cloaking discriminatory animus. See id.

The parties dispute neither that Caruso was disabled, as statutorily defined, nor that she could perform the essential functions of her job, with or without accommodation.  They disagree only as to the third element that Caruso must satisfy: that Delta reasonably accommodated her disability.

> Reasonable accommodations may include
>
> job restructuring, part-time or modified work schedules, reassignment to a vacant position...and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).  Generally, the determination of reasonableness is fact-intensive and "must be assessed on a case-by-case basis."  Trahan v. Wayfair Maine, LLC, 957 F.3d 54, 65 (1st Cir. 2020).  However, in US Airways, Inc. v. Barnett, 535 U.S. 391, 395 (2002), the United States Supreme Court articulated a distinct rule when a disabled employee seeks an accommodation under the ADA within a seniority-based bidding system, such as the one Delta uses to assign flight attendants, including Caruso, to flights.  The Supreme Court held that, in those circumstances, the ADA's requirement of reasonable accommodation does not require an employer to alter such a system to accommodate a disabled employee unless the employee

> show[s] that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested accommodation is reasonable on the particular facts.

- 17 -

Id. at 405.  Those circumstances may include the employer's
retention of the right to change the seniority system
unilaterally, its exercise of that right "fairly frequently" or
the frequent use of exceptions to that system. Id.; see also
Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 137 (1st Cir.
2009).  In the context of a seniority-based assignment system,
therefore, the plaintiff bears the burden of proving that the
requested accommodation is reasonable under the ADA, rebutting
an assumption that the system will prevail. US Airways, Inc.,
535 U.S. at 405; see also Eustace v. Springfield Pub. Sch., 463
F. Supp. 3d 87, 104 (D. Mass. 2020).

Caruso has failed to rebut that presumption and, thus, her
claim for failure to accommodate cannot survive Delta's pending
motion.  She has provided no evidence of circumstances that
would justify carving out an exception to the general rule
articulated in US Airways, Inc., 535 U.S. at 405.  Her vague
assertion that the seniority system should not control based
upon Delta's size and financial resources are insufficient for
that purpose and have not been recognized as salient in the
governing case law.  Caruso fails even to acknowledge the
deference courts have shown consistently to seniority-based
assignment systems in her opposition to defendant's motion for
summary judgment.

Accordingly, Caruso's claim for failure to accommodate under state and federal disability law is foreclosed, as is her claim for failure to engage in an interactive process. Delta's motion for summary judgment on Courts 3 and 4 will, therefore, be **ALLOWED.**

### 3.    Retaliation claims (Counts 5, 8 and 9)

In addition to proscribing workplace harassment and discrimination, Chapter 151B, Title VII and the ADA prohibit an employer from retaliating against an employee for opposing an employment practice deemed unlawful under those provisions. See M.G.L. c. 151B, § 4; 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a)-(b).

> In order to establish a prima facie case of retaliation, [an employee] must show that (1) she engaged in protected conduct; (2) she was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct.

Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018) (citation omitted); see also Cherkaoui v. City of Quincy, 877 F.3d 14, 28 (1st Cir. 2017) (applying same standard to both Massachusetts state and federal claims for retaliation). Caruso's allegations of retaliation are asserted only in the broadest of strokes in her original complaint. She more clearly articulates the bases of her claims in her opposition to defendant's pending motion. Caruso contends that the protected

conduct at issue was her submission of complaints to both Delta and the MCAD arising from her alleged assault and her request for workplace accommodations.  The adverse employment actions to which Caruso claims she was subject are the reprimand she purportedly received after requesting assistance from colleagues about the whereabouts of Lucas and her constructive discharge.

The parties do not dispute that Caruso's conduct was protected, rather they disagree as to whether she was subject to an adverse employment action because of that conduct.  An adverse action

> is typically one that alters a term or condition of employment, such as demotions, disadvantageous transfers, or refusals to promote.

Fournier v. Massachusetts, No. 20-2134, 2021 WL 4191942, at *3 (1st Cir. Sept. 15, 2021).  Nevertheless, the relevant statutes have also been applied more generally to prohibit

> all employer actions that would have been materially adverse to a reasonable employee, defined as actions that are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

Rivera-Rivera, at 95 (quotations omitted); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006) ("[T]he antiretaliation provision...is not limited to actions that affect the terms and conditions of employment.").  However, "for retaliatory action to be material, it must produce a significant, not trivial harm." Sepulveda-Vargas v. Caribbean

- 20 -

Restaurants, LLC, 888 F.3d 549, 555 (1st Cir. 2018) (quotation omitted).  It is an "objective assessment" evaluated from "the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Rivera-Rivera, at 95 (quotation omitted).

The Court first addresses whether the reprimand Caruso allegedly received constituted an adverse employment action.

> The First Circuit has recognized that a reprimand may constitute an adverse action where it carries tangible employment consequences, such as termination, suspension, or a change in compensation and other benefits.

Shaffer v. IEP Techs., LLC, No. CV 18-10160-DPW, 2021 WL 3616072, at *13 (D. Mass. Aug. 16, 2021) (citing Billings v. Town of Grafton, 515 F.3d 39, 54-55 (1st Cir. 2008)).  An actionable reprimand that imposes such consequences is in contrast to a reprimand that is

> merely directed at correcting some workplace behavior that management perceive[s] as needing correction

which generally is not actionable. Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011).  Here, Caruso has proffered no evidence to suggest tangible consequences associated with the purported reprimand.  In her opposition to defendant's pending motion, Caruso claims for the first time that Delta forced her to delete the message she sent to her colleagues but, even assuming arguendo that forcing Caruso to do so would amount to a

- 21 -

tangible consequence, the record is devoid of evidence to support that assertion.

In <u>Billings</u> v. <u>Town of Grafton</u>, 515 F.3d 39, 42 (1st Cir. 2008), the First Circuit Court of Appeals recognized that a reprimand lacking tangible consequences, in conjunction with other purportedly retaliatory conduct, can, in certain circumstances, constitute an adverse employment action.  The reprimand at issue in that case, however, involved a threat of further, more serious discipline.  The Court held that an employee facing such a threat "might well choose not to proceed with the [discrimination] litigation". <u>Id</u>. at 55.  In contrast to the circumstances in <u>Billings</u>, the reprimand that Caruso received involved no threat of further action and resulted in none.  Thus, the purported reprimand Caruso received carried with it no consequences or even the threat of consequences and therefore was neither materially adverse nor actionable. <u>See</u> <u>Bhatti</u>, 659 F.3d at 73.

Nor does Caruso's alleged constructive discharge constitute an actionable adverse employment action.  To the extent that Caruso's failure to accommodate claim forms the basis of her constructive discharge, she may not "simply repackage[e]" that claim into a retaliation claim. <u>Incutto</u> v. <u>Newton Pub. Sch.</u>, No. CV 16-12385-LTS, 2019 WL 1490132, at *5 (D. Mass. Apr. 4, 2019)

(citing <u>Snowden</u> v. <u>Trustees of Columbia Univ.</u>, No. 12 CIV. 3095
GBD, 2014 WL 1274514, at *6 (S.D.N.Y. Mar. 26, 2014), aff'd, 612
F. App'x 7 (2d Cir. 2015) ("[A]ny activity comprising
Plaintiff's primary failure-to-accommodate claim, such as the
submission of a reasonable accommodation request form or
participation in the post-request interactive process, cannot
also constitute protected activity such as that required to form
the basis of a retaliation claim.").

Consequently, Caruso was not subject to an adverse
employment action and, the Court need not consider whether such
action was causally linked to the protected conduct.  Caruso's
claims for retaliation cannot stand and, accordingly, the
defendant's motion for summary judgment on Courts 5, 8 and 9
will be **ALLOWED**.

### 4.    Interference with rights claim (Count 6)

In her original complaint, Caruso asserts that Delta
interfered with her pursuit of rights afforded under M.G.L. c.
151B, in violation of § 4(4A) of that provision.  In her
opposition to defendant's pending motion, however, Caruso notes
in a footnote that Delta failed to confer with her prior to
submitting its motion.  Caruso reveals that, had Delta done so,
it would have learned that Caruso was willing to dismiss her
claim for interference.  Although Caruso has not dismissed that

claim, it is not referred to again in that opposition.  Caruso's "abandonment of the claim amounts to waiver." Leader v. Harvard Univ. Bd. of Overseers, No. CV 16-10254-DJC, 2017 WL 1064160, at *6 (D. Mass. Mar. 17, 2017) (citing Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) (recognizing that "[i]t should go without saying that we deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument.").  Accordingly, Delta's motion for summary judgment on Count 6 will be **ALLOWED**.

### 5.    Aiding and abetting claim (Count 7)

Caruso contends that Delta violated M.G.L. c. 151B, § 4(5) by aiding and abetting Lucas in his violation of M.G.L. c. 151B by impeding the reporting of and investigation into Caruso's alleged assault, declining to provide Caruso (and interfering with her ability to obtain) information concerning the alleged assault, acting with undue deference to Lucas during its own investigation into the assault and failing to take reasonable steps to protect Caruso from Lucas.  Defendant rejoins that Caruso abandoned that claim because she addressed it only cursorily in her opposition to defendant's pending motion.

Although Caruso's defense of that claim is indeed abbreviated, the Court finds the claim has not been waived given the interconnectedness of the claim to the rest of her case and

the limited opportunity Caruso was provided to defend each of
her numerous claims.

The claim cannot stand, however, because it is "entirely
derivative" of the sex discrimination claims that the Court has
already resolved in favor of Delta. <u>Lopez</u> v. <u>Commonwealth</u>, 463
Mass. 696, 713 (2012) (quoting <u>Abramian</u> v. <u>President & Fellows
of Harvard College</u>, 432 Mass. 107, 122 (2000)).  Consequently,
to sustain an aiding and abetting claim under § 4(5):

> in addition to the individual and distinct wrong that
> the defendant must be alleged to have committed, the
> complaint must allege the commission of an underlying
> act of discrimination under G.L. c. 151B (the main
> claim) by the principal offender.

<u>Id</u>. (citation omitted).  The sex discrimination claims are the
only possible foundation for the § 4(5) claim because they are
the only claims for which Lucas, rather than Delta itself, is
the alleged principal offender.  Because Caruso's claims of sex
discrimination have been dismissed, the derivative claim cannot
stand.  Delta's motion for summary judgment on Count 7 will
therefore be **ALLOWED**.

**ORDER**

For the foregoing reasons, the motion of defendant for summary judgment (Docket No. 60) is **ALLOWED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 9, 2022